IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| PALOMAR SPECIALTY INSURANCE COMPANY, | § § § |
| Plaintiff, | § § |
| v. | §   CASE NO.: 1:23cv276 TBM-RPM |
| SJM INVESTMENTS LLC; & C.E.R.T. RESTORATION LLC, | § § § § |
| Defendants. | § § |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Palomar Specialty Insurance Company ("Palomar") and, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, submits this Complaint for Declaratory Judgment against Defendants SJM Investments LLC and C.E.R.T. Restoration LLC, and states as follows:

1. This is an action for declaratory relief for the purpose of resolving an actual controversy concerning the availability and scope of insurance coverage under the insurance policy described below.

2. This declaratory action arises out of claims for insurance benefits under a commercial insurance policy that Palomar issued to SJM Investments LLC.

## PARTIES

3. Palomar is a corporation organized and existing under the laws of the State of California, with its principal place of business in La Jolla, California.

4. SJM Investments LLC ("SJM") is a Mississippi limited liability company. Upon information and belief, SJM is comprised of three members: Shirish Patel, an adult citizen of the

State of Alabama; Jayesh Patel, an adult citizen of the State of Mississippi; and Mayur Patel, an adult citizen of the State of Mississippi.

5. C.E.R.T. Restoration LLC ("CERT") is a Florida limited liability company. Upon information and belief, CERT is comprised of two members: Carm Valburn, an adult citizen of Florida; and Sabrina Valburn, an adult citizen of Florida.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Palomar, SJM, and CERT, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7. Venue in the Southern District of Mississippi is proper pursuant to 28 U.S.C. § 1391(b) because the property at issue in this litigation is located in this District and the events giving rise to this litigation occurred in this District.

## FACTUAL BACKGROUND

8. SJM owned and operated a Days Inn hotel located at 15250 Poole Street, Gulfport, Mississippi.

9. October 28, 2020, the property was allegedly damaged by Hurricane Zeta.

10. On November 10, 2020, SJM entered into a contract with CERT, in order for CERT to provide emergency services including water remediation.

11. The contract between SJM and CERT contained an assign provision whereby SJM assigned to CERT any and all insurance rights, benefits, and proceeds due under any applicable insurance policy coverage the property in exchange for the services and materials provided by CERT for the protection, preservation, and/or remediation of the property.

2

12. CERT alleges that it performed water and mold remediation at the property, and seeks payment for that work.

13. Specifically, CERT seeks $480,992.08 for water remediation work, and $20,228.11 for mold remediation at the property.

14. In addition to SJM's contract with CERT, SJM also retained a public adjuster and claimed additional damage to the property.

15. As part of its claim investigation, Palomar retained an engineer to inspect the property to determine if there was any covered damage.

16. On January 21, 2021, the engineer inspected the property.

17. The engineer determined that the metal roof covering was damaged as a result of high winds from the hurricane, but determined that the roof membrane was not punctured.

18. The engineer determined that there was no water intrusion through the roof deck because the membrane was not punctured, and determined that there was no water intrusion consistent with roof damage on the third-floor ceilings.

19. Although the engineer identified some damage to the metal roof, he determined that the roof could be repaired, and replacement of the entire roof was unnecessary.

20. The engineer observed numerous stains and delaminated drywall on the ceilings of rooms on the first and second floors, and determined that the stains and delaminated drywall were located in consistent locations in the rooms, and were in line with cracks noted on the adjacent walkway's ceilings.

21. The engineer observed water dripping from an exterior faucet on the third floor, and observed water drip onto the ceiling of the second-floor walkway. The engineer observed stains and fungal growth within the adjacent room.

22. The engineer observed water penetrating through a crack in the walkway, and observed that cracks in the walkway were in straight lines and evenly spaced. Because of this, the engineer determined that the cracks were not the results of high winds.

23. The engineer determined that the cracks were consistent with expansion of construction joints in the concrete, and any water intrusion through those cracks were the result of construction defects.

24. The engineer determined that water stains and delaminated ceiling drywall in the bathrooms were all located on the north side of the property, and resulted from plumbing leaks and improper ventilation.

25. The engineer did not observe any water damage consistent with storm damage, and determined that there was no damage at the property resulting from storm-created openings.

26. The engineer determined that any water mitigation or remediation that was performed at the property was the result of non-storm related events.

27. The engineer observed several sections missing sections of vinyl soffit on the second and third floors, but determined that the missing sections resulted from improper installation and was not storm-related.

28. The engineer observed fogged windows throughout the property, but determined that the fogged windows did not result from storm damage.

29. Based on the above, the engineer reached the following conclusions: the metal roof covering was damaged by high winds from the storm, but the displaced panels could be replaced and complete roof replacement was not required; stains and delaminated drywall observed on the first and second floors resulted from construction defects and were not the result of storm-created openings; any water mitigation/remediation services performed was not the result of the hurricane;

4

the missing and displaced soffit was the result of improper installation; and fog and condensation observed within the windows was not caused by the hurricane.

30. As a result of the engineer's inspection and report, Palomar, through its third-party adjuster, generated an estimate for the covered damage which contained a replacement cost value of $25,354.98, and an actual cash value of $24,793.50.

31. The policy contains a named-storm deductible of $42,740. Therefore, the deductible exceeded Palomar's damage estimate.

32. On April 5, 2021, Palomar, through its third-party adjuster, issued a letter to SJM through its public adjuster, informing SJM of the covered damage, but also informing SJM that due to the named-storm deductible, no payment would issue.

33. The April 5 letter also noted the construction defect and improper installation issues, and cited the applicable policy language.

34. On August 24, 2021, SJM, through its public adjuster, provided Palomar with an estimate for damage repair, which included $10,247.72 replacement cost value for other structures, and $482,246.96 replacement cost value for the property itself.

35. In addition to the estimate, SJM also claims $69,548.06 for elevator repairs.

36. Palomar issued an insurance policy to SJM bearing policy number CPARP-20-1004370-01, for the policy period March 29, 2020 to March 29, 2021.

37. The policy contains a Building policy limit of $2,137,000.

38. The policy contains a 2% named storm deductible, which totals $42,740.00.

39. The policy contains a Building and Personal Property Coverage Form, which contains the following Insuring Agreement:

5

A.  Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1.  **Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

a.  **Building**, meaning the building or structure described in the Declarations, including:

(1)  Completed additions;

(2)  Fixtures, including outdoor fixtures;

(3)  Permanently installed:

(a)  Machinery; and

(b)  Equipment;

(4)  Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a)  Fire-extinguishing equipment;

(b)  Outdoor furniture;

(c)  Floor coverings; and

(d)  Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5)  If not covered by other insurance:

(a)  Additions under construction, alterations and repairs to the building or structure;

      **(b)**    Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

   **b.**    **Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

      **(1)**    Furniture and fixtures;

      **(2)**    Machinery and equipment;

      **(3)**    "Stock";

      **(4)**    All other personal property owned by you and used in your business;

      **(5)**    Labor, materials or services furnished or arranged by you on personal property of others;

      **(6)**    Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

          **(a)**    Made a part of the building or structure you occupy but do not own; and

          **(b)**    You acquired or made at your expense but cannot legally remove;

      **(7)**    Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others. . . .

40.    The policy contains a Causes of Loss – Special Form, which sets out certain exclusions to coverage:

    **A.**    **Covered Causes Of Loss**

7

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

B. **Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    . . .

    h. **"Fungus", Wet Rot, Dry Rot And Bacteria**

    Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

    But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

    This exclusion does not apply:

    (1) When "fungus", wet or dry rot or bacteria result from fire or lightning; or

    (2) To the extent that coverage is provided in the Additional Coverage, Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.[1]

    . . .

2. We will not pay for loss or damage caused by or resulting from any of the following:

    . . .

    d. (1) Wear and tear;

       (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in the property that causes it to damage or destroy itself;

---

[1] The policy does contain Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, subject to a $15,000 policy limit.

. . .

  **(4)**  Settling, cracking, shrinking or expansion;

. . .

  **(7)**  The following causes of loss to personal property:

    **(a)**  Dampness or dryness of atmosphere;

    **(b)**  Changes in or extremes of temperature; or

    **(c)**  Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

. . .

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

. . .

**j.** Rain, snow, ice or sleet to personal property in the open.

. . .

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

 **a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

9

. . .

 **c.** Faulty, inadequate or defective:

  . . .

  **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

  **(3)** Materials used in repair, construction, renovation or remodeling; or

  **(4)** Maintenance;

  of part or all of any property on or off the described premises.

 . . .

**C.** **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

 . . .

 **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

  **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, sand or dust enters; or

  **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure. . . .

      41.      The policy contains a Limitations on Coverage for Roof Surfacing endorsement, which states:

      **A.**      The following applies with respect to loss or damage by a **Covered Cause of Loss (including wind and hail if covered)** to a building or structure identified in the Schedule as being subject to this Paragraph **A.**:

           Replacement Cost coverage (if otherwise applicable to such property) does not apply to roof surfacing. Instead, we will determine the value of roof surfacing at actual cash value as of the time of loss or damage.

      **B.**      The following applies with respect to loss or damage by **wind and/or hail** to a building or structure identified in the Schedule as being subject to this Paragraph **B.**:

           We will not pay for cosmetic damage to roof surfacing caused by wind and/or hail. For the purpose of this endorsement, cosmetic damage means that the wind and/or hail caused marring, pitting or other superficial damage that altered the appearance of the roof surfacing, but such damage does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the cosmetic damage occurred.

      **C.**      For the purpose of this endorsement, roof surfacing refers to the shingles, tiles, cladding, metal or synthetic sheeting or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

      42.      The policy contains a Wind Driven Rain Endorsement, which states in pertinent part:

The term Covered Cause of Loss includes the Additional Coverage – Wind Driven Rain as described and limited below:

We will pay for direct physical loss or damage to the interior of any building or structure, or to personal property in the building or structure caused by or resulting from rain, snow, sleet, or ice, when driven by wind. Additional Exclusions:

We will not pay for loss or damage caused directly or indirectly by any of the following:

      (1)      Sand or dust, unless the building or structure first sustains damage caused by a Covered Cause of Loss to its roof or walls through which the sand or dust enters;

11

> We will not pay for loss or damage caused directly or indirectly by any of the following 2.a. through 2.d. below. But if an excluded cause of loss that is listed in 2.a. through 2.d. below results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
>> (2) Faulty, inadequate or defective:
>>
>> . . .
>>
>> (b) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>>
>> (c) Materials used in repair, construction, renovation or remodeling;
>>
>> (d) Maintenance;
>>
>> of part or all of any property on or off the described premises.
>
> If loss or damage to Covered Property is caused by or results from wind-driven rain, we will not pay for loss or damage in any once occurrence until the amount of loss or damage exceeds the deductible. Unless stated elsewhere, the deductible for Wind-Driven Rain will be the same deductible applied to Wind and Hail, Named Windstorm or Named Storm Only.
>
> The sublimit for Wind-Driven Precipitation is $100,000 per occurrence of loss and in the annual aggregate and is included within the limit of insurance as shown in the policy. The sublimit does not increase the limit of insurance.
>
> All other provisions apply.

43. Neither SJM nor CERT are entitled to coverage because the loss is not covered and/or the loss is excluded under the terms of the policy.

44. An actual controversy exists concerning the nature and extent of Palomar's obligations under the policy, and Palomar brings this action to resolve those issues.

**COUNT I – DECLARATION THAT PALOMAR DOES NOT OWE COVERAGE TO SJM**

45. Palomar realleges and incorporates by reference the allegations contained in Paragraphs 1-44 as if fully set forth herein.

12

46. The cost to repair covered damage totals $25,354.98 replacement cost value and $24,793.50 actual cash value.

47. The actual cash value and replacement cost value are both less than the policy's named-storm deductible, which totals $42,740.

48. Because the deductible exceeds the amount of the loss, Palomar does not owe any additional payments to SJM.

49. Any damage other than that identified as covered damage by Palomar does not constitute a Covered Cause of Loss.

50. Any damage other than that identified as covered damage by Palomar is excluded by the terms of the policy, including but not limited to the following exclusions and/or limitations: Exclusion 1.h.; Exclusion 2.d.(1); Exclusion 2.d.(2); Exclusion 2.d.(4); Exclusion 2.d.(7); Exclusion 2.f.; Exclusion 2.j.; Exclusion 2.m.; Exclusion 3.a.; Exclusion 3.c.(2); Exclusion 3.c.(3); Exclusion 3.c.(4); Limitation C.1.c.; the Limitations on Coverage for Roof Surfacing endorsement; and/or Exclusions (2)(b) through (d) of the Wind Driven Rain Endorsement.

51. Therefore, to the extent there is any damage other than that identified by Palomar, any such damage is excluded from coverage.

52. Based on the foregoing, SJM is not entitled to coverage from Palomar.

53. An actual controversy exists concerning the nature and extent of Palomar's obligations under the policy.

54. Wherefore, premises considered, Palomar requests the following relief:

(a) That this Honorable Court take jurisdiction of this Complaint;

(b) That this Honorable Court order, adjudge, and decree that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(c) That the process of this Honorable Court be issued to SJM as provided by law and the rules of this Court and that SJM be ordered to respond to this Complaint within the time prescribed by law, or in the event of a failure to do so, suffer a decree *pro confesso*;

(d) That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree the rights, status, and liabilities under the policy;

(e) That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree that Palomar does not owe coverage to SJM; and

(f) That, if Palomar is mistaken in any special relief herein prayed for, then it prays for such other, further, more general relief to which it may be entitled.

## COUNT II – DECLARATION THAT PALOMAR DOES NOT OWE COVERAGE TO CERT

55. Palomar realleges and incorporates by reference the allegations contained in Paragraphs 1-44 as if fully set forth herein.

56. The mold and water mitigation/remediation performed by CERT was not related to, and did not arise out of, covered damage caused by the storm.

57. To the extent the property suffered from mold and/or water damage, and CERT seeks payment for mitigation and/or remediation of said damage, the damage does not constitute a Covered Cause of Loss.

58. To the extent the property suffered from mold and/or water damage, and CERT seeks payment for mitigation and/or remediation of said damage, the damage is excluded by the terms of the policy, including but not limited to the following exclusions and/or limitations: Exclusion 1.h.; Exclusion 2.d.(1); Exclusion 2.d.(2); Exclusion 2.d.(4); Exclusion 2.d.(7); Exclusion 2.f.; Exclusion 2.j.; Exclusion 2.m.; Exclusion 3.a.; Exclusion 3.c.(2); Exclusion 3.c.(3); Exclusion 3.c.(4); Limitation C.1.c.; the Limitations on Coverage for Roof Surfacing endorsement; and/or Exclusions (2)(b) through (d) of the Wind Driven Rain Endorsement.

59. Based on the foregoing, SJM is not entitled to coverage from Palomar.

14

60.     An actual controversy exists concerning the nature and extent of Palomar's obligations under the policy.

61.     Wherefore, premises considered, Palomar requests the following relief:

(a)     That this Honorable Court take jurisdiction of this Complaint;

(b)     That this Honorable Court order, adjudge, and decree that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(c)     That the process of this Honorable Court be issued to CERT as provided by law and the rules of this Court and that CERT be ordered to respond to this Complaint within the time prescribed by law, or in the event of a failure to do so, suffer a decree *pro confesso*;

(d)     That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree the rights, status, and liabilities under the policy;

(e)     That, upon final hearing of this cause, this Honorable Court will order, adjudge, and decree that Palomar does not owe coverage to CERT; and

(f)     That, if Palomar is mistaken in any special relief herein prayed for, then it prays for such other, further, more general relief to which it may be entitled.

Respectfully submitted,

s/ Brenen G. Ely
Brenen G. Ely (Bar # 105795)
Counsel for Palomar Specialty Insurance Company

**OF COUNSEL:**
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, Alabama 35243
Telephone: (205) 313-1200
Facsimile: (205) 313-1201
bely@elylawllc.com